## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### AT LEXINGTON

**CIVIL CASE NO. 14-261-WOB-CJS**

**SANDRA VICE STONE**                                                                 **PLAINTIFF**


**v.**               <u>**REPORT AND RECOMMENDATION**</u>


**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                              **DEFENDANT**

* * * * * * * * * * * *

Plaintiff Sandra Vice Stone brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying her application for benefits under Title II of the Social Security Act.  This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits.  After a thorough review of the administrative record, for the reasons explained below it will be **recommended** that Plaintiff's Motion for Summary Judgment be **denied**, and the Commissioner's Motion for Summary Judgment be **granted.**

## I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402

U.S. at 401 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id*. (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (*citing* 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not

2

performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id.* (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. *Id.* Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id.* (*citing Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's alleged disability began on January 1, 2007, when she was 49 years old. (Administrative Record (A.R.) 28, 173). Plaintiff has a high school education and previous work experience as a shoe department manager. (*Id.* at 30-31). Plaintiff claims her ability to work is limited by chronic hepatitis C, hypothyroidism, diverticulitis, asthma with beginning stages of chronic obstructive pulmonary disease (COPD), and arthritis in both knees, left knee worse than right. (*Id.* at 191).

The medical evidence demonstrates Plaintiff sought treatment for her various conditions. Of particular note, Plaintiff was diagnosed with hepatitis C in 2007, which she believes she contracted from a blood transfusion she received during a cesarean section in 1977. (A.R. 436). She was treated in 2008 for hepatitis C, but was a nonresponder. (*Id.*). In 2011, her doctor referred her

to the University of Kentucky Transplant Center for a liver transplant evaluation.  (*Id*. at 436-38).

On July 19, 2011, Plaintiff was notified that the transplant committee had discussed her case, but

based on the program's selection criteria, they would not be pursing her evaluation for a liver

transplant because she needed to lose weight.  (A.R. 367).  The transplant committee gave Plaintiff

a goal weight of 191 pounds and set an appointment for September 30, 2011, to check her progress.

(R. 367).  Although difficult to read, it appears Plaintiff was able to reduce her weight because on

October 10, 2011, Plaintiff was notified that the committee would begin an evaluation.  (A.R. 361).

On November 17, 2011, Plaintiff was notified that she met the selection criteria and had been placed

on the waiting list for a liver transplant.  (R. 356).  During 2012 and 2013, Plaintiff continued to be

monitored by the transplant clinic.  Treatment notes indicate that after regaining the weight, Plaintiff

was removed from the transplant list in July 2012, to be reevaluated again after she lost weight.  (R.

684-86).  As of the date of the administrative hearing, Plaintiff had not been returned to the liver

transplant list, and she estimated her weight on that date to be 220 pounds.  (A.R. 28).

Also of note is Plaintiff's treatment for knee pain.  (A.R. 479-500).  Diagnostic testing of her

left knee in 2010 revealed some arthritic changes, moderate joint effusion, and degenerative changes.

(A.R. 496-500).   From May 2010 until at least June 2012, Plaintiff was treated with steroid

injections.  (A.R. 479-95).  Diagnostic testing of both knees in December 2012 revealed Plaintiff had

osteoarthrosis in both knees, more pronounced on the left where she had moderate to severe

osteoarthrosis in the medial femorotibial compartment.  (A.R. 602-04).  In September 2013, Plaintiff

underwent a total left knee arthroplasty.  (A.R. 709-711).

On September 24, 2012, Plaintiff filed an application for disability insurance benefits, and

the Administration determined she last met the insured status requirements of the Act on

4

December 31, 2011. (*Id.* at 14, 67). Her claim was denied initially On January 4, 2013, and again

upon reconsideration on March 12, 2013. (*Id.* at 67-76, 78-87, 88-91, 95-97). Plaintiff had a hearing

before an ALJ on October 15, 2013. (*Id.* at 26-61). During this hearing, the ALJ heard testimony

from Plaintiff and a vocational expert (VE). (*Id.*). After receiving testimony and reviewing the

record, the ALJ issued a written decision on November 18, 2013, finding Plaintiff was not disabled

within the meaning of the Social Security Act. (*Id.* at 12-20). The Appeals Council subsequently

denied Plaintiff's request for review. (*Id.* at 1-4).

      The ALJ used the five-step sequential process to determine that Plaintiff was not disabled.

(*Id.* at 94). *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff had not

engaged in substantial gainful employment since January 1, 2007–the date of her alleged onset date

of her disability–and that she last met the insured status requirement of the Social Security Act on

December 31, 2011. (A.R. 14). At step two, the ALJ determined that Plaintiff had the severe

impairments of obesity, cirrhosis secondary to chronic hepatitis C with possible component of non-

alcoholic steatohepatitis, and osteoarthritis of the knees. 20 C.F.R. § 404.1520(c). (*Id.*). The ALJ

found Plaintiff's mild breathing difficulties, hypertension, hypothyroidism, and scattered

diverticulosis were not severe impairments. (A.R. 14-15).

      At step three, the ALJ analyzed Plaintiff's impairments individually and in combination, and

found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in

any of the Listing of Impairments under the applicable Federal Regulation, and specifically

referenced his consideration under SSR 02-1p and Listings 5.05 and 1.02. (*Id.* at 15-16). At step

four, the ALJ determined that through the date Plaintiff was last insured, December 31, 2011, she

had the residual functional capacity (RFC) to perform medium work, as defined in 20 C.F.R.

§ 404.1567(c), with the following limitations:

> lifting/carrying 50 pounds occasionally and 25 pounds frequently; standing/walking 6 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; occasionally climbing ladders, ropes, scaffolds; occasional kneeling, crouching, and crawling; avoidance of full body vibration and all hazards such as unprotected heights and dangerous machinery.

(*Id.* at 16).

At the hearing, the ALJ heard testimony from an impartial VE who stated that based on the RFC provided by the ALJ, Plaintiff could perform her past relevant work and thus was not disabled. (*Id.* at 18-19, 57-58).  Although the ALJ found Plaintiff not disabled at step four, he proceeded to step five and made an alternative finding, based on the VE's testimony, that given a person with Plaintiff's age, education, work experience, and the stated RFC, there were other jobs in the national economy that such a person could perform, namely representative occupations such as bench assembly, packing/sorting, and measuring/checking/inspecting. (*Id.* at 19-20).  Accordingly, the ALJ concluded that Plaintiff was not "disabled" for social security purposes.  (*Id.* at 23).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council and submitted additional medical evidence from her treating physicians , and on May 7, 2014, the Appeals Council denied Plaintiff's request for review rendering the ALJ's November 18, 2013, decision denying Plaintiff benefits the final decision of the Commissioner.  (*Id.* at 1-4).  In making this decision, the Appeals Council notified Plaintiff that the new evidence did not affect the disability decision because it did not relate to her condition on or before December 31, 2011. (*Id.* at 2).  On July 1, 2014, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not supported by substantial evidence and contrary to law.  (R. 1).

6

Plaintiff and the Commissioner have filed Motions for Summary Judgment. (R. 12, 13). Plaintiff's motion lists two issues for review: 1) "whether the Commissioner's decision [Plaintiff] could perform at the medium exertional level was supported by substantial evidence"; and 2) "whether an error of law occurred due to the ALJ's failure to ascertain the claimant's residual functional capacity from her treating physician before her date last insured." (R. 12-1, at 4). In presenting her argument, however, Plaintiff has further broken down these issues and presents the following five arguments: 1) the ALJ erred by giving inappropriate weight to the non-examining state agency consultant's opinion, which was given prior to important medical evidence was in the record; 2) the ALJ erred in failing to obtain medical opinion evidence on the severity of Plaintiff's impairments after she was placed on the liver transplant list; 3) the ALJ failed to properly evaluate Plaintiff's obesity in combination with her other impairments; 4) the ALJ erred in not finding Plaintiff met or equaled Listing 5.05(F); and 5) the ALJ erred in not finding Plaintiff was disabled under the Medical-Vocational Guidelines. In addition, Plaintiff has submitted evidence to this Court that was not before the ALJ, and thus the Court must determine whether a sentence six remand is appropriate.

## III.   ANALYSIS

### A.   The ALJ did not err in giving weight to a non-examining consultant's opinion, which was given prior to having a complete record

Plaintiff argues that the ALJ erred in giving inappropriate weight to a state agency's medical consultant's opinion that was rendered prior to Exhibits 7F through 12F being filed in the administrative record. Plaintiff makes this statement without citation to any particular evidence that she argues should have been considered in determining if Plaintiff's conditions were disabling on December 31, 2011–her date last insured.

In order to establish eligibility for disability benefits, Plaintiff must establish that she became disabled prior to the expiration of her insured status–December 31, 2011.  *See* 42 U.S.C. § 423(c)(1); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (*citing Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  "Evidence of disability obtained after the expiration of insured status is generally of little probative value."  *Strong v. Soc. Sec. Admin*., 88 F. App'x 841, 845 (6th Cir. 2004) (*citing Cornette v. Sec'y of Health & Human Servs*., 869 F.2d 260, 264 n.6 (6th Cir. 1988)).  However, the Sixth Circuit has found that medical evidence after the relevant period may establish a condition during the insured period so long as the "temporal relation is reasonably proximate and supported by corroborative evidence arising during the insured period."  *See DeVoll v. Comm'r of Soc. Sec., 234 F.3d 1267, 2000 WL 1529803, at \*4 (6th Cir. 2000) (table decision) (*citing Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976)).  Evidence generated after the date last insured must relate specifically to limitations and the severity of the limitations prior to the insured period and not merely to a condition or a diagnosis.  *See Higgs*, 880 F.2d at 863.  A showing that an impairment became disabling after the expiration of the claimant's insured status is not sufficient to establish eligibility for disability benefits.  *See King v. Secretary of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990) (finding substantial evidence supported ALJ's decision that claimant was not disabled by her musculoskeletal impairments during her period of eligibility notwithstanding a diagnosis of degenerative disc disease six months after her date last insured).

Here, Plaintiff argues the state-agency medical consultant's opinion was not entitled to any weight because her opinion was based on an incomplete administrative record as Exhibits 7F through 12F had not yet been filed in the record.  Review of the record demonstrates that most of the medical evidence contained in Exhibits 7F through 12F was generated after Plaintiff's date last insured.  The

few documents that were generated prior to her date last insured appear to be largely duplicates of documents contained in Exhibit 3F, which Plaintiff does not argue the consulting physician did not consider.  (*Compare* A.R. 376-80 *with* A.R. 628-32; A.R. 374 *with* 634; A.R. 371-72 *with* 692-93). Plaintiff has not identified any specific evidence that she alleges was not before the consulting physician that either related to her condition during her insured period or was reasonably proximate to her insured period and should have been considered.  Thus, Plaintiff has failed to establish that the consulting physician was without evidence that was relevant to a determination of her disability status during the insured period.

Instead, Plaintiff broadly asserts, without any legal citation or specific document reference, that the ALJ erred in giving weight to the opinion of a non-examining consulting physician who did not have the complete record.  As another court in this circuit noted, "[w]hile it is incumbent upon the ALJ to review later-generated evidence which relates back to plaintiff's condition prior to the expiration of her insured status, there is nothing which requires him to reject medical opinions that do not consider such evidence."  *Montano v. Comm'r of Soc. Sec.*, 1:13-cv-70, 2014 WL 585363, at *9 (S.D. Ohio Feb. 14, 2014) (*citing White v. Sec'y of H.H.S.*, No. 90-5642, 1990 WL 193049, at *2 (6th Cir. 1990)), *adopted by* 2014 WL 1408060 (S.D. Ohio Apr. 11, 2014).

Here, the ALJ's decision to give "great weight" to the opinion of the state-agency medical consultant is supported by substantial evidence that pre-dated Plaintiff's date last-insured.  The ALJ explained the objective medical evidence as follows:

> The claimant was diagnosed with hepatitis C in 2007, and it is believed that she got it from a blood transfusion in 1977.  She was treated for hepatitis at UK in 2008 but was a nonresponder.  Exhibit 3F.  In November 2011, the claimant was placed on the liver transplant waiting list.  However, in a September 2011 visit she was noted to be walking two miles per day.  In July 2011, the claimant was noted to have no ascites or history of an upper GI bleed.  The most recent endoscopy revealed no varices.

9

Exhibit 3F.  Because of the claimant's abilities despite her condition at the time of the date last insured, the undersigned concludes that the condition did not limit her more at the time of her date last insured than set forth in the residual functional capacity.

As for the claimant's osteoarthritis, May 2010 x-rays of her left knee revealed mild degenerative changes of the medial compartment and small joint effusion.  May 2010 MRI of her left knee revealed moderate joint effusion, findings concerning for mild degree of popliteal tendon tendionpathy and mild peritendinitis and edema and information of the anterior soft tissues.  There were mucoid degenerative changes medial meniscus.  There was evidence for chondromalacia and also degenerative change, mild early spur formation at the lateral and medial compartments of the knee; high grade, grade 3 chondromalacia at the patella; and few subchondral cysts, most prominent at the region of the tibial spines.  Exhibit 2F.  June 2010 x-rays of her left knee revealed mild arthritic changes to the medial side.  Exhibit 4F.  The claimant underwent injections in her left knee every couple of months beginning in May 2010 and routinely indicated that the injections helped for a time.  In October 2011, the claimant had normal gait and intact strength and sensation despite being 60" and 197 pounds.  Exhibit 4F.  Because the claimant had undergone only injection therapy prior to her date last insured, and repeatedly indicated that she was improved by injection, the undersigned concludes that prior to her date last insured, her knee osteoarthritis did not limit her more than set forth in the residual functional capacity.

In sum, the above residual functional capacity assessment is supported by the fact the claimant stopped working for reasons other than her allegedly-disabling impairments, her failure to lose weight as instructed by her doctors, the objective medical evidence, and the state agency consultant's physical assessment which is given great weight as being consistent with the objective medical evidence regarding the claimant's condition prior to the date last insured.  The undersigned notes that the record contains no opinions indicating that the claimant is disabled, or even more limited than the state agency consultant's physical assessment and the residual functional capacity.

(A.R. 18) (footnotes omitted).  Further, in explaining his findings, the ALJ noted his consideration of the exhibits Plaintiff references, but found the evidence occurred after her date last insured and thus was too remote to be relevant to Plaintiff's RFC on the date she was last insured.  (A.R. 18 nn.2-3).

The Sixth Circuit recently reiterated that generally, "an ALJ may provide greater weight to a state agency physician's opinion when the physician's finding and rationale are supported by

evidence in the record." *Reeves v. Comm'r of Soc. Sec.*, __ F. App'x __, 2015 WL 4231600, at *7 (6th Cir. July 13, 2015) (*citing* 20 C.F.R. § 404.1527; *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.")).  Here, there was no other opinion evidence before the ALJ,[1] and the ALJ explained the objective medical evidence regarding Plaintiff's condition prior to her date last insured and found the state-agency's consulting physician's opinion to be consistent with the objective medical evidence.  Accordingly, the ALJ did not error in giving the state agency consulting physician's opinion great weight, finding it supported by the evidence for the period prior to her date last insured.

**B.**     **The ALJ did not err in not seeking additional medical opinion evidence from a treating physician or a consultative examiner on the severity of Plaintiff's impairments after she was placed on the liver transplant list**

Plaintiff argues that the ALJ erred in not seeking opinion evidence from her treating providers or a consulting examiner to determine the severity of her impairments at the time she was placed on the liver transplant list.  The Commissioner argues that the ALJ was not required to seek a consultative examination or opinions of treating physicians regarding Plaintiff's RFC at the time she was first placed on the transplant waiting list because the record was sufficient as it stood for the ALJ to make such a determination.

Plaintiff has not cited any authority that requires an ALJ to contact a treating provider to request the treating source provide a medical opinion.  The regulations, however, provide that if the ALJ cannot reach a conclusion regarding a claimant's disability due to the insufficiency or

---

[1] Plaintiff's argument regarding her submission of a treating physician opinion to the appeals council will be discussed *infra*.

inconsistency of the evidence, the Commissioner "will try to resolve the inconsistency or insufficiency" by taking one or more specified actions, including ordering a consultative examination or recontacting the claimant's treating physician for additional evidence or clarification.  20 C.F.R. § 404.1520b(c).[2]  However, the regulation further indicates that while the ALJ may recontact a treating source, he is not required to do so.  *Id*. ("We might not take all the actions listed below," such action to include recontacting treating source, request additional testing, order consultative examination; or ask claimant or others for additional information).  Further, where there is no inconsistency or insufficiency, the ALJ need not obtain the "findings and opinions" of the claimant's treating physician but will make the decision on the basis of the evidence of record.  20 C.F.R. § 404.1520b(a); *see also Cox v. Comm'r of Soc. Sec.*, __ F. App'x __, 2015 WL 3621451, at *8 (6th Cir. June 11, 2015) (rejecting argument ALJ required to contact treating physician to obtain opinion where no showing evidence inconsistent or insufficient); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364 (6th Cir. 2014) (rejecting argument that ALJ had duty to seek "findings and opinions" of treating physician in order to fully develop the record as then-applicable regulation, § 404.1512(e), did not impose such a duty where ALJ found record sufficient to determine disability).

Here, the ALJ found the existing record sufficient to determine the functional limitations imposed by Plaintiff's impairments on her date last insured and found the record sufficient to render a disability determination.  Thus, the ALJ did not need to obtain any further evidence or clarification

---

[2] Prior to March 25, 2012, 20 C.F.R. § 404.1512(e) directed ALJs to recontact a disability claimant's treating physician under certain circumstances.  This regulation was amended and the paragraph imposing a duty on the ALJs to recontact a disability claimant's treating physician under certain circumstances was removed.  *See* 77 FR 10651-01, 2011 WL 7404303 (effective March 26, 2012).

from a treating source and did not err in not seeking an opinion of Plaintiff's treating physician. Even if the ALJ had found the record evidence was inconsistent or insufficient to render a disability determination, the amended regulation does not impose a mandate that the ALJ recontact the treating source in this circumstance, but simply gives the ALJ the discretion to do so.   20 C.F.R. § 404.1520(b).

Further, Plaintiff's argument that the ALJ erred in not obtaining a consultative examination also lacks merit.   Plaintiff cites no rule or regulation that requires an ALJ to order such an examination.   Instead, the regulations provide an ALJ with the discretion to obtain a consultative examination where the record lacks sufficient evidence to make a determination, but does not mandate that one be obtained.   20 C.F.R. §§ 404.1519a(b); 404.1520b(c)(3); *see also Landsaw v. Sec'y of Health & Human Servs*., 803 F.2d 211, 214 (6th Cir. 1986) ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."); *Lucas v. Comm'r of Soc. Sec*., 1:11 CV 2497, 2013 WL 1150019, at *1 (N.D. Ohio Mar. 19, 2013) ("Ordering a consultive exam lies in the discretion of the ALJ.") (*citing Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)).

Lastly, to the extent Plaintiff may be suggesting the ALJ should have obtained a medical expert to testify at the administrative hearing, this argument also fails.   An ALJ's decision whether a medical expert is necessary is inherently discretionary.   There is no mandate requiring an ALJ to solicit such evidence.   *See Simpson v. Comm'r of Soc. Sec*., 344 F. App'x 181, 189 (6th Cir. 2009) ("20 C.F.R. §§ 404.1527([e])(2)(iii) and 416.927([e])(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony . . .").   Ultimately, the ALJ is

13

charged with the duty of evaluating the medical evidence in the record and determining the claimant's RFC. *See* 20 C.F.R. § 404.154(c). Thus, any argument Plaintiff makes in this regard lacks merit.

### C.   The ALJ did not err in his consideration of Plaintiff's obesity in combination with her other impairments

Plaintiff argues that the ALJ erred in not considering the effect her obesity has on her other impairments. Plaintiff acknowledges the ALJ stated that he considered Social Security Ruling 02-1p, but argues he failed to provide any analysis of the impact Plaintiff's obesity has on her other impairments, and specifically argues he should have considered the impact obesity had on her non-severe impairments of hypothyroidism, asthma and granulomatous disease. (R. 12-1, at 8-10).

Although obesity is no longer a listed impairment, SSR 02-1p instructs adjudicators to consider a claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation. *See* SSR 02-1p, 2002 WL 34686281, at *5 (Soc. Sec. Admin. Sept. 12, 2002); *see also Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006). However, SSR 02-1p does not require a particular procedural mode of analysis for obesity. *Bledsoe*, 165 F. App'x at 411-12.

Here, the record supports a finding that the ALJ considered Plaintiff's obesity. First, the ALJ found Plaintiff's obesity to be a severe impairment at step two. (A.R. 14). Further, at step three, the ALJ explained at length how obesity must be considered in a disability determination despite it no longer being a listing impairment, and stated he considered her obesity at steps three-five. (A.R. 15-16). The ALJ stated at step three that through the date last insured, the claimant did not have an impairment that met or equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Because the ALJ further stated he considered the effects of the Plaintiff's obesity in steps three through five after finding it to be a severe impairment, these statements are sufficient

14

to establish that obesity was considered by the ALJ at step three.  *See Smith v. Comm'r of Soc. Sec.*, No. 3:13-cv-713, 2014 WL 1898523, at *12 (N.D. Ohio May 12, 2014) (no requirement that ALJ provide specific analysis regarding consideration of obesity and statement that ALJ considered all impairments sufficient to demonstrate obesity considered).

At step four, the ALJ considered and gave great weight to the report of state-agency consulting physician Dr. Caldwell in determining Plaintiff's RFC.  (A.R. 18).  While Dr. Caldwell identified Plaintiff's obesity as a severe impairment, she opined that as of December 31, 2011, her date last insured, Plaintiff could stand/walk for a total of six hours in an eight-hour work day; she could sit for a total of six hours in an eight-hour workday; lift and carry 50 pounds occasionally and 25 pounds frequently; could climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; occasionally crouch and crawl; and should avoid concentrated exposure to vibration and hazardous machinery and heights.  (A.R. 83-84).  Dr. Caldwell further stated Plaintiff has no manipulative, visual or communicative limitations.  (A.R. 84).  In making this assessment, Dr. Caldwell specifically considered Plaintiff's obesity, and also discussed her hypothyroidism, hypertension, and possible COPD.  (A.R. 84-85).

The Sixth Circuit has held that "the ALJ does not need to make specific mention of obesity if he credits an expert's report that considers obesity."  *Bledsoe*, 165 F. App'x at 412; *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (holding the ALJ's discussion of claimant's obesity in his findings of fact and the ALJ's use of RFC evaluations from physicians who explicitly considered claimant's obesity supports the finding that the ALJ adequately accounted for the effects of obesity).  Here, the ALJ considered and gave great weight to Dr. Caldwell's report, which included a specific reference to Plaintiff's obesity.  (A.R. 82-84)*.*  Further,

the ALJ provided a thorough analysis of Plaintiff's medical record as of her date last insured, and there is no separate evidence about functional limitations from obesity contained in the administrative record that the ALJ overlooked. Therefore, the ALJ properly considered the effects of Plaintiff's obesity and complied with SSR 02-1p.[3]

In addition, Plaintiff's argument that the ALJ was required to provide an analysis of why her obesity and liver disease did not meet Listing 5.09 lacks merit. (R. 12-1, at 9). Plaintiff argues that if she received the liver transplant she would be found disabled at Listing 5.09, and thus suggests that it is nonsensical to find her obesity, hypothyroidism and liver disease do not equal that Listing when her obesity is what is keeping her off of the liver transplant list. Listing 5.09, however, provides that a claimant is considered disabled for one year following the date of transplantation after which time the claimant must be reevaluated. Thus, Listing 5.09 provides benefits for a claimant recuperating from a liver transplant. Plaintiff's argument that her conditions equal this listing fails as there is no basis for providing a one-year period of recuperation prior to a transplant being performed. Nor has Plaintiff pointed to any evidence suggesting her condition medically equaled recovery from a liver transplant. Accordingly, since Plaintiff has not had a liver transplant, regardless of the reason,

---

[3]To the extent Plaintiff argues that the ALJ erred in his determination of Plaintiff's credibility by finding she failed to follow prescribed treatment by not losing weight and incorrectly applied SSR 82-59, her argument lacks merit. Under SSR 82–59, if an ALJ finds a claimant "disabled," the ALJ has authority to deny disability to the claimant on the grounds the claimant refused without justification to follow prescribed treatment that would render him/her not disabled. Here, the ALJ did not reference Plaintiff's failure to lose weight as a basis for denying disability under SSR 82-59 to a person found disabled. Instead, the ALJ considered her failure to lose weight as one factor in determining the credibility of her statements regarding the severity of her impairments. Further, any arguable error in the ALJ's use of Plaintiff's failure to lose weight as demonstrating a lack of credibility is harmless, as the ALJ's credibility analysis was also based on other factors, including that she quit working for reasons unrelated to her physical complaints and because the medical records during her insured period demonstrated she walked two miles a day, had normal gait and intact strength of her lower extremities, and reported improvement of her knee pain with injections/treatment.

Listing 5.09 is not applicable, and her argument that the ALJ should have considered whether her obesity in combination with her other impairments equaled this listing fails.

**D.      The ALJ did not err in finding Plaintiff did not meet or equal Listing 5.05(F)**

Plaintiff argues that the ALJ erred in not finding her combination of impairments equaled Listing 5.05(F) for hepatic encephalopathy.  (R. 12-1, at 10-11).  Such condition is defined "as a recurrent or chronic neuropsychiatric disorder, characterized by abnormal behavior, cognitive dysfunction, altered state of consciousness, and ultimately coma or death," with a diagnosis established by "changes in mental status associated with fleeting neurological signs, including 'flapping tremor' (asterixis), characteristic electroencephalograph (EEG) abnormalities, or abnormal laboratory values that indicate loss of synthetic liver function."  20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 5.00(D)(10), 5.05(F).  The claimant must then meet 5.05(F)(1) **and** either 5.05(F)(2) or (3), as follows:

> 1.      Documentation of abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness (for example, confusion, delirium, stupor, or coma), present on at least two evaluations at least 60 days apart within a consecutive 6-month period; and
>
> 2.      History of transjugular intrahepatic portosystemic shunt (TIPS) or any surgical portosystemic shunt; or
>
> 3.      One of the following occurring on at least two evaluations at least 60 days apart within the same consecutive 6-month period as in F1:
>         a.      Asterixis or other fluctuating physical neurological abnormalities; or
>         b.      Electroencephalogram (EEG) demonstrating triphasic slow wave activity; or
>         c.      Serum albumin of 3.0g/dL or less; or
>         d.      International Normalized Ratio (INR) of 1.5 or greater.

20 C.F.R., Pt. 404, Subpt. P, A pp. 1, § 5.05(F).

17

Plaintiff's argument on this point is limited, but she appears to argue that she should be found to meet 5.05(F)(1) due to her November 9, 2012, hospitalization where she was treated after being found unresponsive in her home. Plaintiff, however, admits that she has only this one documented instance of abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness. (R. 12-1, at 11). She argues, however, that her testimony at the administrative hearing establishes other episodes of confusion and lack of mental clarity.

The claimant bears the burden of demonstrating that her impairment matches all the specified criteria of a listing. *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727-28 (6th Cir. 2004) *(citing Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002).

Here, Plaintiff cannot satisfy Listing 5.05(F)(1). Specifically, Plaintiff has not pointed to documentation of abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness on at least two evaluations at least 60 days apart within a consecutive 6-month period prior to her date last insured. While Plaintiff points to a November 9, 2012, hospitalization, that hospitalization occurred 11 months after her date last insured, and the documentation does not suggest this episode related back to her date last insured. (R. 534-49).

Further, even if the November 9, 2012, hospitalization was deemed to relate to her insured period, Plaintiff has not pointed to a second evaluation within a consecutive 6-month period that would provide sufficient documentation of a change in her mental status or an altered state of

18

consciousness prior to her date last insured.[4]  Thus, Plaintiff has not pointed to evidence of record that demonstrates she satisfied the criteria of Listing 5.05(F).  Nor does Plaintiff point to evidence of record indicating that the combination of her impairments rendered her disabled during her insured period.  Accordingly, Plaintiff has not met her burden of establishing that she met or medically equaled Listing 5.05(F) prior to December 31, 2011, her date last insured, and thus this argument fails.

### E.   The ALJ did not err in finding Plaintiff was not disabled under the Medical-Vocational Guidelines

Plaintiff briefly argues that if the medical opinions of her treating physicians are credited, Rule 201.12 of the Medical-Vocational Guidelines would mandate a finding of disabled.[5]  20 C.F.R. part 404, subpart P, appendix 2, Rule 201.12.  However, as discussed below, the medical opinions Plaintiff cites in support of her argument were not contained in the administrative record below and thus cannot be considered here for purposes of determining whether to uphold, modify, or reverse the ALJ's decision.  *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 544 (6th Cir. 2014).  Rule 201.12 of the Medical Vocational Guidelines provides that a person is disabled if she is limited to sedentary work, is closely approaching advanced age, is a high school graduate, and her past work experience is unskilled.  Rule 201.12 is not applicable here because the ALJ did not find Plaintiff

---

[4]Even if the Court considered Plaintiff's testimony at the evidentiary hearing, she still has not established she meets or equals Listing 5.05F.  Specifically, Plaintiff's did not testify to abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness .  Instead, Plaintiff testified to being forgetful, but did not provide any details and she was able to provide adequate historical testimony of her medical condition and treatment.

[5]Plaintiff cites to Rule 201.09 on page 9 of her briefing, but that rule applies to persons with limited or less education.  As Plaintiff graduated from high school (*see* A.R. 30), the Court assumes citation to this Rule was unintentional based on her current argument that she should be found disabled pursuant to Rule 201.12.

was limited to sedentary work, but found she could perform a reduced range of medium work.  (A.R.

16).  *See Madden v. Comm'r of Soc. Sec.*, 81 F.3d 160, 1996 WL 148615, at *2 (6th Cir. 1996) (table

decision).  Accordingly, Plaintiff's argument that she is entitled to a finding of disability under Rule

201.12 of the Medical-Vocational Guidelines fails.

### F.    Remand under sentence six is not appropriate for consideration of new evidence

Plaintiff has submitted to this Court a December 3, 2013, Medical Source Statement of Dr.

Thuriarajah and a June 14, 2014, letter from Dr. Shah.  (R. 12-2; R. 12-3).  Dr. Thuriarajah's

Medical Source Statement was submitted to the Appeals Council in conjunction with her request for

review.  (A.R. at 2).  The Appeals Council returned the evidence, finding it did not relate to whether

Plaintiff was disabled on or before December 31, 2011, as it was for a time period after her date last

insured.  (*Id.*).  Plaintiff submitted Dr. Shah's letter for the first time to this Court, which letter

explains that Dr. Thuriarajah's Medical Source Statement, while dated December 3, 2013, should

have been understood to relate back to November 2011, the date Plaintiff was first placed on the

liver transplant list.  (R. 12-3).  Dr. Shah states he concurs in Dr. Thuriarajah's assessment and that

the limitations imposed were present on the date she was placed on the transplant list.  (*Id.*).  Plaintiff

argues a remand is appropriate so that Dr. Thuriarajah's statement and Dr. Shah's letter can be

considered.[6]  (R. 12-1, at 8).

In addition, Plaintiff has submitted to this Court her February 19, 2015, affidavit, wherein

she explains she attempted to obtain a Medical Source Statement from her treating providers at the

UK Transplant Clinic prior to her administrative hearing, but they would not agree to complete the

---

[6]While the Commissioner is correct that the Plaintiff did not specifically request a sentence six remand, her argument can be reasonably interpreted to make such a request, and thus the Court will review whether a sentence six remand is appropriate.

forms as a matter of course and she did not have the money to pay for their opinions.  (R. 12-4).  She further states that upon being denied benefits, the doctors "expressed disbelief" because they thought being placed on the transplant list in November 2011 was sufficient for a finding of disability.  Dr. Thuriarajah subsequently agreed to complete a Medical Source Statement to be submitted to the Appeals Council.  After the Appeals Council found Dr. Thuriarajah's statement to be relevant to a later time period than that under review, Dr. Shah prepared a letter, stating he agreed with Dr. Thuriarajah's statement of Plaintiff's limitations and explaining these limitations existed on the date Plaintiff was placed on the transplant list–November 2011.  (*Id.*).

It is well established that evidence first submitted to the Appeals Council or to a reviewing court cannot be considered by the reviewing court when reviewing an ALJ's decision.  *Moore*, 573 F. App'x at 544 (*citing Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (where the Appeals Council considers new evidence but declines to review a claimant's application, the reviewing court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision)).  However, under sentence six of 42 U.S.C. § 405(g), a reviewing court can remand the matter to the Commissioner for consideration of the evidence if the plaintiff establishes the evidence is new, material and there is good cause for her failure to present the evidence before the ALJ.  *Cox,* 2015 WL 3621451, at **7-8 (*citing Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) (*citing* 42 U.S.C. § 405(g)).  A plaintiff bears the burden of establishing she meets the requirements for a sentence six remand.  *Id*. (*citing Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006)).

Here, Plaintiff argues Dr. Thuriarajah's statement and Dr. Shah's letter are new and material and she was unable to secure them prior to the hearing through no fault of her own.  (R. 12-1, at 8).

21

This evidence is, in fact, "new" since neither statement was "in existence or available to the claimant at the time of the administrative proceeding." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) *(citing Foster*, 279 F.3d at 353).

To be found "material," however, there must be a reasonable probability that the Commissioner would have reached a different result on Plaintiff's disability claim if presented with the new evidence. *Id.* (*citing Foster*, 279 F.3d at 357). Plaintiff has not met her burden of establishing that Dr. Thuriarajah's statement and Dr. Shah's letter are material to a disability decision for an insured period ending on December 31, 2011.

An ALJ is required to give a treating source's opinions controlling weight only where the following conditions are met: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Here, neither doctor referenced any objective medical evidence in support of their opinions of limitations that were dated prior to December 31, 2011, or that were relevant and within a reasonably proximate time to establish the limitations existed during the insured period. Instead, Dr. Shah seems to suggest that the fact Plaintiff was placed on the liver transplant list should have been sufficient to make that connection. Diagnosis, however, is not conclusive of disability, as it does not indicate the severity of the condition or it limitations. *See Butterworth v. Colvin*, No. 7:13-cv-558, 2015 WL 1407553, at *5 (W.D. Va. Mar. 25, 2015) (plaintiff's argument that his placement on a liver transplant list should be sufficient to find him disabled is not persuasive–the administrative record must show more than a diagnosis; it must show an inability to work); *Strange v. Colvin*, No. 3:12-cv-01264, 2013 WL 3814251, at *13 (M.D. Tenn. July 22, 2013) (affirmed ALJ's finding of

not disabled despite being on liver transplant list), *adopted by* 2014 WL 3924551 (M.D. Tenn. Aug. 11, 2014).

Further, Dr. Thuriarajah opined in his report that Plaintiff has postural and manipulative limitations as a result of her mental capacity being limited by hepatic encephalopathy. (R. 12-2). However, Plaintiff concedes in her briefing that the only documented instance of abnormal behavior, cognitive dysfunction changes in mental status, or altered state of consciousness was in November 2012, 11 months after her date last insured. (R. 12-1, at 10-11). Further, her only testimony of mental impairment was of instances of forgetfulness/memory problems. (A.R. 48). There is no reference in Dr. Thuriarajah's statement or Dr. Shah's letter to support the limitations imposed as a result of hepatic encephalopathy that would indicate these limitations were present during the insured period. Nor has Plaintiff pointed this Court to any specific objective evidence that would support a finding that Dr. Thuriarajah's statement of limitations caused by Plaintiff's mental capacity existed during the insured period. Thus, Plaintiff has not met her burden of establishing a reasonable probability that the new evidence would have affected the outcome of the proceeding.

Even assuming Plaintiff can establish Dr. Thuriarajah's and Dr. Shah's statements are new and material, she cannot show good cause. The Sixth Circuit has held that good cause is not met where the evidence was generated for the purpose of proving disability in contrast to evidence produced by continued medical treatment of the condition. *See Koulizos v. Sec'y of Health & Human Servs.*, 802 F.2d 458, 1986 WL 17488, at *2 (6th Cir. Aug. 12, 1986) (table decision); *Mendendorp v. Comm'r of Soc. Sec.*, No. 1:11-cv-266, 2012 WL 991649, at *7 (W.D. Mich. Jan. 30, 2012) ("The good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision."), *adopted by* 2012 WL 991625, at *3 (W.D. Mich. Mar. 23, 2012) (evidence

23

submitted post hearing for purposes of clarification was to prove disability and not appropriate for sentence six remand).   Accordingly, Plaintiff has not established a sentence six remand is appropriate.

**IV.      CONCLUSION AND RECOMMENDATION**

As explained above, the ALJ's decision is supported by substantial evidence and should be affirmed.   Accordingly, **IT IS RECOMMENDED** that:

1.      The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed**;

2.      Plaintiff's Motion for Summary Judgment (R. 12) be **denied**;

3.      Defendant's Motion for Summary Judgment (R. 13) be **granted**; and,

4.      Judgment be entered and this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived.   28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).   A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b).

Dated this 25th day of August, 2015.



**Signed By:**

***Candace J. Smith***

**United States Magistrate Judge**

G:\DATA\social security\14-261 Stone R&R.vlc.final.wpd